**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA AT WHEELING**

ELECTRONICALLY FILED
Jul 14 2023
U.S. DISTRICT COURT
Northern District of WV

WENDELL A. MARCUM, JR.,

Plaintiff,

vs. Civil Action No. **5:23-CV-255 (Bailey)**

NILE CLINE, individually,
SHANE LOGSTON, individually,
BROOKE COUNTY COMMISSION, a political subdivision of the State of West Virginia,

Defendants.

## COMPLAINT

This complaint, brought pursuant to 42 U.S.C. Section 1983, the Fourth Amendment to the United States Constitution, arises out of the defendant's commission of an unreasonable search and seizure and false arrest against the Plaintiff at his residence, on or about August 24, 2021 in Brooke County, West Virginia, within the Northern District of West Virginia.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 1343.

## INTRODUCTION

1. On August 24, 2021, the defendant police officers, Nile Cline and Shane Logston, under color of law, working for the Brooke County Sheriff's Department, performed a warrantless arrest of the Plaintiff, in the absence of exigent circumstances, within the curtilage of his residence, tasing him in the process, for the alleged crimes of disorderly conduct and obstruction. The charges were subsequently dismissed with prejudice.

2. The Supreme Court held in Payton v. New York, 445 U.S. 573 (1980) that, "absent exigent circumstances, an arrest in the home or curtilage area around the home must be accomplished by means of an arrest warrant…." In Rogers v. Pendleton, 249 F.3d 279 (4th Cir. 2001), the Fourth Circuit held that police officers must have probable cause plus either a warrant, or exigent circumstances, to perform a search or seizure within the curtilage of a person's home, and that if asked to leave, officers are required to leave and seek a warrant.

## PARTIES

3. The Plaintiff, Wendell A. Marcum, Jr., was at all times relevant hereto a resident of Wellsburg, Brooke County West Virginia.

4. Defendant, Nile Cline, was at all times relevant hereto, a Deputy employed by the Brooke County Sheriff's Department, and was at all times relevant hereto acting under color of law, having an address of 632 Main Street #3, Wellsburg, West Virginia 26070.

5. Defendant, Shane Logston, was at all times relevant hereto, a Deputy employed by the Brooke County Sheriff's Department, and was at all times relevant hereto acting under color of law, having an address of 632 Main Street #3, Wellsburg, West Virginia 26070.

6. Defendant, Brooke County Commission, was at all times relevant hereto, a political subdivision of the State of West Virginia, having an address of 632 Main Street, Wellsburg, WV 26070.

## FACTS

7. On August 24, 2021, Plaintiff was at his residence on Darby Lane, Wellsburg, Brooke County, West Virginia.

8. On August 24, 2021 at approximately 7:15 p.m., Plaintiff's neighbor called 911 complaining that Plaintiff's two dogs had escaped Plaintiff's yard, and had allegedly chased her daughter.

9. Defendants Cline and Logston of the Brooke County Sheriff's Department were dispatched to the vicinity of the Plaintiff's residence in response to the dog complaint.

10. The defendant officers first met with the complainant and determined that her daughter was safe; that she had not been harmed, and that the Plaintiff's dogs were no longer running loose.

11. Upon arrival at Plaintiff's residence Defendants Cline and Logston verified that the dogs were properly contained by the Plaintiff.

12. Defendants Cline and Logston, after having entered within the curtilage of Plaintiff's residence, proceeded to approach Plaintiff. Plaintiff, located within a fenced enclosure of his front yard, being upset that the officers were on his property unnecessarily, responded angrily, with profanity, demanding that the Defendants leave his property. The defendant officers did not leave, instead escalating the situation unnecessarily.

13. Although being entirely within the curtilage of Plaintiff's residence, Defendants Cline and Logston proceeded to tell Plaintiff that he would be arrested for disorderly conduct if he didn't stop swearing.

14. Plaintiff was exercising his First Amendment rights to criticize the defendant officers, including through the use of profanity, due to the fact that he believed they were violating his constitutional rights, as well as his privacy in refusing to leave the curtilage of his residence.

15. Plaintiff continued using profanity towards the officers, who refused to leave the curtilage of his property. Defendant Cline then told Plaintiff that he was under arrest for disorderly conduct, due to using profanity, and proceeded to forcefully grab him in order to place him in handcuffs.

16. Defendants Cline and Logston violently forced Plaintiff to the ground, forcibly held him down, and tased him multiple times.

17. Defendant was unarmed. At no point did he threaten or strike the defendant officers. At no point did the defendant officers have any reason to believe that Plaintiff posed an immediate safety threat.

18. Plaintiff was then taken to the Brooke County Sheriff's Department where he was processed and released with a citation for disorderly conduct and resisting arrest.

19. Both of the charges against Plaintiff were subsequently dismissed with prejudice.

## LAW COMMON TO ALL CLAIMS

20. The law is clearly established that, "absent exigent circumstances, an arrest in the home or curtilage area around the home must be accomplished by means of an arrest warrant…." Payton v. New York, 445 U.S. 573 (1980). Police officers must have probable cause plus either a warrant, or exigent circumstances, to perform a search or seizure within the curtilage of a person's home, and if asked to leave, officers are required to leave and seek a warrant. Rogers v. Pendleton, 249 F.3d 279 (4th Cir. 2001).

21. Supreme Court jurisprudence extends heightened Fourth Amendment protections beyond just the interior of the home itself, but also to the "curtilage," which is the "land immediately surrounding and associated with the home," because the curtilage is "considered

part of the home itself for Fourth Amendment purposes." Oliver v. United States, 466 U.S. 170, 180 (1984). The Fourth Circuit has made clear that a warrantless search of curtilage is presumed to be unreasonable. Covey v. Assessor of Ohio Cnty., 777 F.3d 186 (4th Cir. 2015).

22. Applying the trespass-based analytical framework, the Supreme Court has determined that a search "undoubtedly occur[s]" when the government, without a warrant, obtains information "by physically intruding" within the curtilage of a house. Florida v. Jardines, 569 U.S. 1, 6 (2013). Thus, a search occurs unless a homeowner has explicitly or implicitly sanctioned the government's physical intrusion into the constitutionally protected area. Id.

23. The Fourth Circuit made clear as early as 2001 that police officers will not be entitled to qualified immunity for failing to comprehend that police officers have no right to enter upon curtilage to make an investigation based on reasonable suspicion, but rather are limited to engaging in a "knock and talk." Rogers v. Pendleton, 249 F.3d 279, 289 (4th Cir. 2001). Additionally, the Court made clear that "searches of the curtilage require probable cause even without regard to the law of trespass." Id; citing United States v. Jackson, 585 F.2d 653, 660 (4th Cir. 1978) ("Of course, a search of one's home or its curtilage, effected as a result of a trespass, is an encroachment on a person's expectancy of privacy and is for that reason, but not because of the trespass, a violation of the Fourth Amendment if not based on probable cause or authorized by a search warrant.").

24. Under the "knock and talk" exception to the warrant requirement, a police officer not armed with a warrant may approach a home and knock, precisely because that is "no more than any private citizen might do." Covey v. Assessor of Ohio Cnty., 777 F.3d 186 (4th Cir. 2015) (citing Jardines, 133 S.Ct. at 1416). This means there is an "implicit license . . . to

approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." Id. An officer may also bypass the front door (or another entry point usually used by visitors) when circumstances reasonably indicate that the officer might find the homeowner elsewhere on the property. Id (citing Pena v. Porter, 316 Fed.Appx. 303, 313 (4th Cir. 2009). "Critically, however, the right to knock and talk does not entail a right to conduct a general investigation of the home's curtilage." Id. (citing Rogers, 249 F.3d at 289).

25. West Virginia's breach of the peace statute, now called "disorderly conduct," for which the defendant police officers performed a warrantless arrest of the Plaintiff,[1] is W. Va. Code Section 61-6-1b, which provides that:

> (a) Any person who, in a public place, any office or office building of the State of West Virginia, or in the State Capitol complex, or on any other property owned, leased, occupied or controlled by the State of West Virginia, a mobile home park, a public parking area, a common area of an apartment building or dormitory, or a common area of a privately owned commercial shopping center, mall or other group of commercial retail establishments, disturbs the peace of others by violent, profane, indecent or boisterous conduct or language or by the making of unreasonably loud noise that is intended to cause annoyance or alarm to another person, and who persists in such conduct after being requested to desist by a law-enforcement officer acting in his or her lawful capacity, is guilty of disorderly conduct, a misdemeanor and, upon conviction thereof, may be confined in jail for twenty-four hours or fined not more than $100: Provided, That nothing in this subsection should be construed as a deterrence to the lawful and orderly public right to demonstrate in support or protest of public policy issues.

26. Thus, WV law creates the possibility for a criminal charge due to a subject's expression of profanity where: (1) The person is in a "public place" and where he (2) Disturbs

[1] The defendant officers also charged Plaintiff with the derivative offense of obstruction for allegedly resisting the said warrantless arrest. However, Plaintiff was not alleged to have obstructed the officers prior to the officers' attempts to take him into custody.

the peace of others by "violent, profane, indecent or boisterous conduct or language; and (3) is requested to desist by a law enforcement officer and doesn't.

27. The West Virginia Supreme Court held in 2015 that the word "others" in W. Va. Code Section 61-6-1b does not include law enforcement officers, but rather than some other third party must be present and actually offended by the subject's conduct, in order to commit the criminal offense of "disorderly conduct." Maston v. Wagner, 781 S.E.2d 936 (W. Va. 2015).[2]

28. The law is clearly established that an individual has a First Amendment right to express profanity during an interaction with law enforcement. *See* Cohen v. California, 403 U.S. 15 (1972); see also Lewis v. City of New Orleans, 415 U.S. 130 (1974) (The U.S. Supreme Court reversed a conviction under a Louisiana statute that had provided that "It shall be unlawful and a breach of the peace for any person wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty.").

## COUNT ONE - EXCESSIVE FORCE UNDER 42 U.S.C. 1983 VIOLATION OF THE FOURTH AMENDMENT

29. Plaintiff hereby incorporates by reference all the allegations contained in the previous paragraphs.

30. Defendants Cline and Logston, under color of state law, used excessive and violent force against the Plaintiff on his own property by violently forcing him to the ground and unnecessarily tasing him multiple times.

---

[2] In the Maston opinion, the Court noted that both the police and defense experts in that case agreed that the disorderly conduct statute could not be violated in the absence of non-law enforcement "others" being present to hear the profanity.

31. When the Defendants engaged in the infliction of violent physical force against the Plaintiff by forcing him to the ground and tasing him multiple times, no objectively reasonable officer could have perceived the Plaintiff as posing an immediate threat to the safety either of the Defendant officers, or any other individual, so as to require the use of violent physical force.

32. The Defendants Cline and Logston had no reasonable suspicion, nor probable cause, to believe that the Plaintiff had committed any crime. Even more importantly, the entirety of the interaction, including the use of force and arrest of the Plaintiff, occurred within the curtilage of Plaintiff's residence and in the absence of a warrant or exigent circumstances.

33. At no time did the Plaintiff attack or assault any police officer, or other individual.

34. Defendants Cline and Logston's actions were objectively unreasonable, unlawful, unwarranted, and in violation of the Plaintiff's clearly established procedural and substantive rights, including the right to be free from excessive force under the Fourth Amendment of the United States Constitution. Fourth Circuit case law has long been clear that violent physical force by a police officer is excessive in response to "mere words" by an arrestee where the arrestee "never pushed, kicked, or threatened anyone." Jones v. Buchanan, 325 F.3d 520 (4th Cir. 2003). A reasonable officer would not have had probable cause to feel threatened by the Plaintiff.

35. The Defendants Cline and Logston's actions were willful, wanton, intentional, malicious and done with a callous and reckless disregard for the Plaintiff's Fourth Amendment right to be free from excessive force. In the event that this Court determines that the use of force, or any portion of the use of force, against the Plaintiff was performed at a time when he

was a pretrial detainee, the Plaintiff pleads excessive force, in the alternative, under the Fourteenth Amendment of the U.S. Constitution.

36. Defendants Cline and Logston are not entitled to qualified immunity. There are numerous examples in the case law of the Fourth Circuit establishing that the use of violent physical force under similar circumstances as occurred here was unreasonable. In Yates v. Terry, 817 F.3d 877 (4th Cir. 2016), the Court described many different similar examples of unreasonably physical force, establishing that as of 2008 that it was clearly established that a police officer was not entitled to use unnecessary, gratuitous, or disproportionate force by repeatedly tasing a nonviolent misdemeanant who presented no threat to the safety of the officer or the public and who was compliant and not actively resisting arrest or fleeing. *See* Meyers v. Baltimore County, 713 F.3d 723, 734–35 ; Jones 325 F.3d at 532–34 ; Bailey v. Kennedy, 349 F.3d 731, 745 (4th Cir. 2003) ; Rowland, 41 F.3d at 174 ; *see also* Parker v. Gerrish, 547 F.3d 1, 9–11 (1st Cir.2008) ; Casey, 509 F.3d at 1282, 1284–86.

37. The Fourth Circuit further noted that, "though our decisions in Meyers, Bailey, and Jones dealt with individuals who were secured when they were subjected to excessive force, our precedent nonetheless provided Terry with fair notice that the force he used against Yates under the facts of this case was unconstitutionally excessive." Yates v. Terry, 817 F.3d 877 (4th Cir. 2016).

38. Specifically in regards to tasers, the Fourth Circuit has explained that "deploying a taser is a serious use of force," that is designed to "inflict a painful and frightening blow…" and that therefore, it "may only be deployed when a police officer is confronted with an exigency that creates an immediate safety risk and that is reasonably likely to be cured by the taser." Yates

v. Terry, 817 F.3d 877 (4th Cir. 2016). Such a risk is not created "simply because [an arrestee] is doing something that can be characterized as resistance - even when that resistance includes physically preventing an officer's manipulations of his body." Id.

39. Even assuming that the defendant officers were justified in taking Plaintiff into custody, at best, the officers allege nominal resistance by Plaintiff, rather than actions creating an immediate safety risk necessitating a taser.

40. As a direct and proximate result of Defendants Cline and Logston's actions, Plaintiff suffered harm, including personal injury, extreme emotional distress, severe pain, attorney fees and expenses, and is entitled to recover for the same.

**COUNT TWO - UNREASONABLE SEIZURE UNDER 42 U.S.C. 1983**
**VIOLATION OF THE FOURTH AMENDMENT**

41. The previous paragraphs are hereby incorporated by reference as though fully restated herein.

42. Defendants Cline and Logston entered upon the private property, and curtilage, of the Plaintiff on August 24, 2021. Defendants Cline and Logston remained on Plaintiff's property after being asked to leave, detaining him and arresting him without reasonable suspicion or probable cause, interrogating him against his will, and furthermore subjecting him to an unreasonable and excessive violent use of physical force.

43. Defendants Cline and Logston performed a warrantless arrest, handcuffed and tased the Plaintiff, all in the absence of either reasonable suspicion or probable cause to do so.

44. At no time did Defendants Cline and Logston possess valid voluntary consent to remain on Plaintiff's property during the events described above. The officers' implied consent to

enter Plaintiff's curtilage was revoked early in the encounter when he demanded that they leave the property and otherwise expressed his displeasure at their unwanted presence. Nevertheless, the officers refused to leave the property.

45. Nor did exigent circumstances exist justifying the officers to enter and remain within the curtilage of Plaintiff's property in the absence of a warrant. The initial dog-related call had already been resolved prior to the interaction between the officers and the Plaintiff. Assuming the officers believed that Plaintiff had committed disorderly conduct by using profanity, one of the officers could have left and applied for an arrest warrant while the other waited outside the residence. Nor was there any reason for the officers to believe that evidence would have disappeared or been destroyed as a result of the delay in seeking a warrant.

46. As a direct and proximate result of Defendants Cline and Logston's actions, Plaintiff suffered harm, including personal injury, extreme emotional distress, severe pain, attorney fees and expenses, and is entitled to recover for the same.

## COUNT THREE - UNREASONABLE SEIZURE UNDER 42 U.S.C. 1983
## VIOLATION OF THE FOURTH AMENDMENT
**(False Warrantless Arrest)**

47. The previous paragraphs are hereby incorporated by reference as though fully restated herein.

48. On August 24, 2021, Defendants Cline and Logston, acting under color of law, jointly participated in, and effected, the warrantless arrest of the Plaintiff for the alleged crimes of disorderly conduct, W. Va. Code § 61-6-1(b), and the derivative charge of obstructing,W. Va. Code § 61-5-17(a).

49. Defendants seized the Plaintiff and arrested him without a warrant and knowingly did so without probable cause to believe that Plaintiff had committed the crime for which he was charged, or any other criminal offense.

50. At the time of the Plaintiff's arrest, the facts and circumstances within the Defendants' joint knowledge, as well as those available to the Defendant officers individually, were not sufficient to warrant a reasonably prudent police officer to believe that under the circumstances present at the time, that Plaintiff had violated any criminal statute or committed any criminal offense. Moreover, the said warrantless arrest occurred within the curtilage of Plaintiff's residence, at a time when the defendant officers were illegally trespassing, having no legal right to be on the property, their implied consent to enter having been expressly and implicitly revoked by Plaintiff.

51. The criminal complaint submitted by Defendant Cline to the Magistrate Court of Brooke County instituting the criminal prosecution of the Plaintiff for disorderly conduct alleged that Plaintiff was "cursing and being loud", and that he continued to do so after being told to stop or he would be charged with disorderly conduct. West Virginia's breach of the peace statute, now called "disorderly conduct," is W. Va. Code § 61-6-1b, which provides that:

> (a) Any person who, in a public place, any office or office building of the State of West Virginia, or in the State Capitol complex, or on any other property owned, leased, occupied or controlled by the State of West Virginia, a mobile home park, a public parking area, a common area of an apartment building or dormitory, or a common area of a privately owned commercial shopping center, mall or other group of commercial retail establishments, disturbs the peace of others by violent, profane, indecent or boisterous conduct or language or by the making of unreasonably loud noise that is intended to cause annoyance or alarm to another person, and who persists in such conduct after being requested to desist by a law-enforcement officer acting in his or her lawful capacity, is guilty of disorderly conduct, a misdemeanor and, upon conviction thereof,

> may be confined in jail for twenty-four hours or fined not more than $100: Provided, That nothing in this subsection should be construed as a deterrence to the lawful and orderly public right to demonstrate in support or protest of public policy issues.

52. The West Virginia disorderly conduct statute, while potentially criminalizing profane language under some limited circumstances, occurring in public and in front of third parties who complain, does not criminalize profane language or swear words uttered during a citizen's interaction with law enforcement.

53. Here, Plaintiff was not in a "public place" but rather was on his own private property. Also, no one but the defendant officers were allegedly annoyed or disturbed by the language. This issue was addressed in Maston v. Wagner, 781 S.E.2d 936 (W. Va. 2015), where the West Virginia Supreme Court held specifically that "the term 'others' does not include law enforcement officers," and that some other citizen has to be around to hear the interaction and complain. Given the fact that the defendant officers used themselves as the "others" who were allegedly annoyed or disturbed by Plaintiff's profanity, as well as the fact that Plaintiff was not in a "public place" at the time of his use of profanity, the charge was subsequently dismissed with prejudice by the Magistrate Court of Brooke County.

54. Upon information and belief, Defendant Cline, believed, and continues to believe, based on his understanding, knowledge and compliance with his department practice and policy, that he was within his authority to arrest the Plaintiff under the facts and circumstances described herein.

55. As stated above, Plaintiff was not in a "public place" but rather was on his own private property. Also, no one but the Defendants were allegedly annoyed or disturbed by the language.

56. Nor could Defendant Cline have established that Plaintiff had committed the crime of obstruction in violation of W. Va. Code § 61-5-17(a), as at no time did Plaintiff fail to do exactly as ordered by any law enforcement officer. This charge was also subsequently dismissed with prejudice.

57. No reasonable police officer in either of the Defendants positions on August 24, 2021 would have believed that probable cause existed to make a warrantless arrest of the Plaintiff where he was merely cursing while standing on his own private property, and where Plaintiff had otherwise violated no law. A reasonable officer would have instead left Plaintiff's property as requested after having already ascertained that the dogs which were the subject of the 911 call had been properly contained by Plaintiff.

58. Plaintiff suffered damages as a direct and proximate result of the foregoing, for which he is entitled to recover.

**COUNT FOUR - UNREASONABLE SEIZURE UNDER 42 U.S.C. 1983**
**VIOLATION OF THE FOURTH AMENDMENT**
**(Malicious Prosecution)**

59. The previous paragraphs are hereby incorporated by reference as though fully restated herein.

60. In the recent Supreme Court opinion in Thompson v. Clark, 596 U.S. _____ (2022), the Court clarified the application of malicious prosecution claims under Section 1983. The Court held that a plaintiff in a Section 1983 malicious prosecution claim is not required to

show that his criminal prosecution ended with an affirmative indication of his innocence. Rather, a plaintiff only needs to show "that his prosecution ended without a conviction."

61. Plaintiff was charged with the alleged crimes of disorderly conduct, W. Va. Code § 61-6-1(b), and the derivative charge of obstructing,W. Va. Code § 61-5-17(a), with the said charges being filed and prosecuted in the Magistrate Court of Brooke County.

62. The said charges were filed by the defendant officers maliciously and for the improper purpose of retaliation, harassment, and to attempt to manufacture perceived justification for the constitutional violations committed against the Plaintiff.

63. The said charges were dismissed with prejudice, thus ending without a conviction.

64. Plaintiff suffered damages as a direct and proximate result of the foregoing, for which he is entitled to recover.

## COUNT FIVE: MONELL CLAIM

65. Plaintiff hereby incorporates by reference all of the previous paragraphs.

66. The Brooke County Commission, which is the political subdivision under which the Brooke County Sheriff's Department operates, is constitutionally charged and responsible for the training and supervision of employees of the Department. The Commission is also constitutionally charged and responsible for the promulgation of policies for the Sheriff's Department.

67. Upon information and belief, the BCC were aware of prior instances of similar misconduct by Defendant Cline and thereafter failed to investigate, supervise, and take appropriate action with respect to Cline, despite the existence of prior legitimate complaints against him for similar unconstitutional misconduct.

68. Additionally, the BCC upon information and belief has a custom of tolerance or acquiescence of federal civil rights violations, such as previously committed by Defendant Cline, and also committed by Defendants Cline and Logston to the Plaintiff as described herein.

69. The actions of the Defendant employees of the Brooke County Commission - Defendants Cline and Logston- of engaging in the unlawful use of excessive force, the warrantless false arrest, and the numerous Fourth Amendment violations perpetrated against the Plaintiff on August 24, 2021, is reflective of the Sheriff Department's policies, training, and practices, which even after August 24, 2021 were not altered or rectified. Upon information and belief, said constitutionally deficient policies remain in place.

70. The BCC knew or should have known that it had insufficiently trained its officers in basic constitutional law, as well as basic state criminal statutory law; an understanding of which is essential to their role as public servants, and greater purpose of the BCC as a whole.

71. As a direct and proximate result of the insufficient or incorrect policies, training, and practice, the Plaintiff was damaged as described herein, for which he is entitled to recover.

**COUNT SIX: VIOLATION OF THE FIRST AMENDMENT (42 U.S.C. 1983)**

72. Plaintiff hereby incorporates by reference all of the previous paragraphs.

73. The Plaintiff engaged in clearly established protected speech in expressing criticism of the defendant police officers for their illegal activities.

74. Not only does the First Amendment protect freedom of speech, it also protects "the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000).

75. The Fourth Circuit has warned that Plaintiff possessed the "right to question or challenge the authority of a police officer, provided that fighting words or other opprobrious language is not used…" and that any resulting arrest under a general obstruction statute is violative of the First Amendment. Id. ; *see* Graham v. Gagnon , 831 F.3d 176, 188 ("Peaceful verbal criticism of an officer who is making an arrest cannot be targeted under a general obstruction of justice statute ... without running afoul of the First Amendment." (citation omitted)); *cited by* Hupp v. State Trooper Seth Cook, 931 F.3d 307 (4th Cir. 2019).

76. Defendants Nile and Logston, acting under color of law, retaliated against Plaintiff for this protected speech by engaging in several adverse actions that would deter a person of ordinary firmness from engaging in such protected speech, including, without limitation, by detaining him, tasing him and then arresting, charging and prosecuting him, all without probable cause.

77. There is a causal connection between Plaintiff's protected speech and the adverse actions, in part because the defendant officers admit that Plaintiff's speech is the reason they were engaging in the adverse actions. *But for* the protected speech engaged in by the Plaintiff, he would not have been detained, arrested, violently attacked, and then charged by the defendant officers. *See, e.g.*, Tobey v. Jones, 706 F.3d 379, 390 (4th Cir. 2013).

78. Defendants have thus violated Plaintiff's clearly established First Amendment rights, as set forth in Hupp v. State Trooper Seth Cook, 931 F.3d 307 (4th Cir. 2019).

79. Plaintiff suffered damages as a direct and proximate result of the foregoing, for which he is entitled to recover.

**PRAYER**

WHEREFORE, based on the above stated facts, the Plaintiff respectfully requests that this Honorable Court award:

1. Damages against the individual Defendants in an amount to be determined at trial which will fairly and reasonably compensate the Plaintiff for all compensatory damages to be proven at trial;

2. Punitive damages against the individual Defendants in an amount to be determined at trial; and

3. Reasonable attorney fees and costs.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

WENDELL A. MARCUM
By Counsel

/s/ John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

/s/ F. Alex Risovich
F. Alex Risovich (WV Bar No. 10866)
RISOVICH LAW OFFICES, PLLC
3023 Pennsylvania Avenue
Weirton, WV 26062
(304) 723-2588
alex.Risovich@risovichlaw.com